UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Brandon Wade Photography, LLC,<br><br>Plaintiff,<br><br>v.<br><br>The Arena Group Holdings, Inc. and ABG-SI LLC<br><br>Defendants. | Case No:<br><br><br>**COMPLAINT**<br><br><br>JURY TRIAL DEMANDED |

Plaintiff Brandon Wade Photography LLC ("*Plaintiff*"), by and through its undersigned counsel, for its Complaint against Defendants The Arena Group Holdings, Inc. ("*Arena*") and ABG-SI LLC ("*ABG-SI*") (collectively, "*Defendants*"), alleges as follows:

**INTRODUCTION**

1. This action seeks to recover damages for copyright Infringements under the Copyright Act, 17 U.S.C. §101 *et seq*.

2. Brandon Wade ("*Wade*") is a professional photographer based in New York who creates, licenses, markets, and distributes original photographic images for editorial, commercial, entertainment, celebrity, sports, fashion, and media-related uses.

3. Through years of professional experience, Wade has developed a substantial portfolio of original photographic works depicting athletes, entertainers, celebrities, public figures, sporting events, and newsworthy occurrences.

4. Wade's photographs have been widely published and licensed by newspapers, magazines, websites, broadcasters, wire services, media organizations, and commercial entities throughout the United States and internationally.

5. Through the creation and licensing of original visual content, Wade has established a reputation for producing high-quality editorial photography and derives income from the authorized licensing and distribution of his copyrighted works.

1

6.      Plaintiff owns, controls, and licenses copyrighted photographic works created by Wade, including the Photographs that are the subject of this action.

7.      Plaintiff maintains exclusive rights under the Copyright Act, including the rights to reproduce, distribute, license, publicly display, and otherwise exploit its copyrighted photographs.

8.      Plaintiff relies upon licensing revenue generated from the lawful use of its photographs and actively protects its copyrighted works against unauthorized reproduction, distribution, and display.

9.      Defendant Arena is a media and publishing company engaged in the ownership, operation, management, publication, distribution, and monetization of digital and print media properties, including Sports Illustrated's digital publishing operations.

10.      Upon information and belief, during the period relevant to this action, Arena owned, operated, managed, controlled, maintained, published, distributed, and monetized content appearing on the website located at www.si.com (the "Website").

11.      Defendant ABG-SI is a Delaware limited liability company affiliated with Authentic Brands Group and served as licensor of Sports Illustrated intellectual property and publishing rights.

12.      Upon information and belief, ABG-SI owned, controlled, licensed, supervised, and maintained rights in and to Sports Illustrated intellectual property, including publications, archives, trademarks, copyrights, digital properties, domain names, and related publishing assets.

13.      Upon information and belief, ABG-SI entered into agreements pursuant to which Arena obtained rights to manage and operate Sports Illustrated's print and digital publishing businesses, including SI.com.

14.      Upon information and belief, Arena managed and operated Sports Illustrated's digital publishing business, including SI.com, pursuant to publishing rights licensed by ABG-SI, and Defendants jointly participated in, authorized, supervised, controlled, facilitated, and/or benefited from the publication and exploitation of content appearing on the Website.

15.      Upon information and belief, the Website forms part of Defendants' commercial

2

enterprise and is used to attract readers, generate advertising revenue, increase user traffic, strengthen brand recognition, and create business opportunities.

16.    Upon information and belief, all content appearing on the Website, including photographs, articles, graphics, videos, advertisements, promotional materials, and related content, was selected, published, authorized, approved, controlled, and/or distributed by Defendants or by persons acting on their behalf and within the scope of their authority.

17.    Defendants, without authorization, reproduced and publicly displayed Plaintiff's Photographs in connection with their commercial activities and in violation of the Copyright Act.

## PARTIES

18.    Brandon Wade Photography, LLC is a Texas Limited Liability Company and maintains its principal place of business in Tarrant County, Texas.

19.    Defendant The Arena Group Holdings, Inc., is a Delaware Corporation with a principal place of business at 200 Vesey St., 24th Floor, New York in New York County, New York.

20.    Defendant ABG-SI, LLC is a Delaware limited liability company with a principal place of business at 1411 Broadway, 21st Floor, New York, New York 10018.

## JURISDICTION AND VENUE

21.    This Court has subject matter jurisdiction over the federal copyright Infringements claims pursuant to 28 U.S.C. §1338(a) and 28 U.S.C. §1331.

22.    This Court has personal jurisdiction over ABG-SI LLC because it maintains its principal place of business in New York.

23.    This Court has personal jurisdiction over The Arena Group Holdings, Inc. because it maintains its principal place of business in New York.

24.    Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b)(2) and 1400(a) because Defendants may be found in this District, regularly conducts business in this District, and a substantial part of the acts and omissions giving rise to Plaintiff's claims occurred in this District, including the unauthorized reproduction, display, distribution, and/or exploitation of Plaintiff's

3

copyrighted work.

## FACTS COMMON TO ALL CLAIMS

**A.      Plaintiff's Copyright Ownership**

25.      Wade is a professional photographer by trade and the creator of certain photographs which Plaintiff commercially licenses.

26.      Wade has devoted substantial time, skill, effort, and expense to developing his photography business and creating a portfolio of original photographs.

27.      Wade's works are valuable intellectual property assets that are commercially licensed to publishers, media outlets, websites, businesses, and other third parties for authorized use in both digital and print media.

28.      Wade is the author and copyright owner of numerous original works protected under the Copyright Act, including the photographs that are the subject of this action.

29.      Plaintiff maintains exclusive rights under the Copyright Act, including the rights to reproduce, distribute, license, publicly display, and otherwise exploit its copyrighted photographs.

30.      Plaintiff derives income from the licensing and authorized use of its copyrighted works and maintains exclusive rights in the works Wade creates pursuant to the Copyright Act.

31.      Plaintiff relies upon licensing revenue derived from the authorized use of its photographs and actively protects its copyrighted works against unauthorized reproduction, distribution, and display. Unauthorized use of Plaintiff's photographs deprives Plaintiff of licensing income, diminishes the value of its copyrighted works, and interferes with the market for authorized licenses.

32.      Plaintiff has obtained active and valid copyright registrations from the United States Copyright Office (the "*USCO*") which cover many of Wade's photographs while many others are the subject of pending copyright applications.

33.      Plaintiff regularly licenses Plaintiff's photographs to media outlets, brands, and commercial entities for a fee.

34.      Plaintiff's photographs are original, creative works in which Plaintiff owns

protectable copyright interests.

35.    On February 12, 2022, Plaintiff first published a Photograph of NBA players, LA Clippers guard Terance Mann (14) and Dallas Mavericks guard Luka Doncic (77) get in each others face during the second half of an NBA basketball game in Dallas, Saturday, February 12, 2022. ("*Photograph #1*"). A copy of Photograph #1 is attached hereto as Exhibit 1.

36.    Plaintiff published Photograph #1 by commercially licensing it to a third-party media company or agency for the purpose of display and/or public distribution.

37.    In creating Photograph #1, Plaintiff personally selected the subject matter, timing, lighting, angle, perspective, depth, lens and camera equipment used to capture the image and made each and every artistic determination necessary for the creation of the work.

38.    On March 28, 2022, Photograph #1 was registered by the USCO under Registration No. VA 2-296-523.

39.    Wade created Photograph #1 with the intention of it being used commercially and for the purpose of display and/or public distribution.

40.    On October 9, 2021, Plaintiff first published a Photograph of DeMarvion Overshown, an American football linebacker, during his collegiate career with the Texas Longhorns. ("*Photograph #2*"). A copy of Photograph #2 is attached hereto as Exhibit 1.

41.    Plaintiff published Photograph #2 by commercially licensing it to a third-party media company or agency for the purpose of display and/or public distribution.

42.    In creating Photograph #2, Plaintiff personally selected the subject matter, timing, lighting, angle, perspective, depth, lens and camera equipment used to capture the image and made each and every artistic determination necessary for the creation of the work.

43.    On January 4, 2022, Photograph #2 was registered by the USCO under Registration No. VA 2-284-645.

44.    Wade created Photograph #2 with the intention of it being used commercially and for the purpose of display and/or public distribution.

45.    Plaintiff acquired the rights in and to the Photograph #1 and Photograph #2 (the

5

"*Photographs*") by way of a valid written assignment agreement.

**B.    Defendant's Infringing Activity**

46.    Defendants owned, operated, managed, controlled, maintained, supervised, licensed, authorized, approved, published, distributed, and/or otherwise participated in the operation of the Website.

47.    The Website is monetized in that it contains paid advertisements and, on information and belief, Defendants profit from these activities.

48.    Upon information and belief, the Website is monetized in that it sells merchandise to the public and, on information and belief, Defendants profit from these activities.

49.    Upon information and belief, the Website forms part of Defendants' commercial enterprise and is used to attract potential customers, promote Defendants' services, increase public visibility, generate business opportunities, and enhance Defendants' brand recognition.

50.    Upon information and belief, Defendants are sophisticated media companies operating in an industry in which the use of professional photography and copyrighted content is prevalent.

51.    Upon information and belief, Defendants knew or should have known that the Photographs were protected by copyright, including because the Photographs were of professional quality and distributed through commercial channels. Despite this, Defendants used the Photographs without seeking permission or obtaining a license.

52.    Upon information and belief, the Photographs contained visible copyright management information, authorship information, a gutter credit, and/or a watermark identifying Plaintiff, which Defendants removed, omitted, obscured, altered, and/or failed to reproduce.

53.    Upon information and belief, Defendants' personnel have significant experience in copyright matters and are familiar with industry practices requiring that photographs used in commercial content, advertising, marketing materials, publications, and social-media posts be properly licensed.

54.    Upon information and belief, Defendant has not implemented adequate internal

6

policies to verify copyright ownership before content use, indicating a gross negligence in legal compliance, which is essential for a company with Defendant's reach, capabilities, and level of sophistication.

55.    Upon information and belief, Defendant's internal policies, if any, are either not designed to verify copyright ownership before content use or are systematically ignored, indicating a willful, recurring disregard for copyright compliance.

56.    Upon information and belief, a number of copyright lawsuits have been filed against Defendant highlighting a pattern of habitual infringement and suggesting Defendant has either failed to rectify systemic issues leading to these infringements or is willfully neglecting copyright laws.

57.    Defendant's failure to adopt or effectively enforce internal copyright policies, if any, indicates *de facto* willful infringement.

58.    On or about July 26, 2022, without permission or authorization from Plaintiff, Defendants willfully and volitionally reproduced and publicly displayed Photograph 1 on the Website as part of an on-line story at URL: https://www.si.com/nba/clippers/news/terance-mann-reveals-truth-about-luka-doncic-rivalry ("*Infringement 1*"). A copy of a screengrab depicting Infringement #1 including Photograph 1, is attached hereto as a part of Exhibit 2.

59.    Photograph 1 was willfully and volitionally reproduced and stored by Defendants at URL: https://www.si.com/.image/c_fill,w_1080,ar_16:9,f_auto,q_auto,g_auto/ MTkxMTc5MDYzNjI3MzU5NDY3/74clqhxacfeu3be3xuis7mfetm.jpg.

60.    Infringement 1 is a copy or substantially similar copy of Plaintiff's Photograph, including protectable elements such as composition, subject matter, timing, angle, lighting, perspective, and overall expressive content.

61.    On or about April 28, 2023, without permission or authorization from Plaintiff, Defendants willfully and volitionally reproduced and publicly displayed Photograph 2 on the Website    as    part    of    an    on-line    story    at    URL: https://www.si.com/search?query=DeMarvion+Overshown ("*Infringement 2*"). A copy of a

screengrab depicting Infringement #2 including Photograph 2, is attached hereto as a part of Exhibit 2.

62.     Infringement 2 is a copy or substantially similar copy of Plaintiff's Photograph, including protectable elements such as composition, subject matter, timing, angle, lighting, perspective, and overall expressive content

63.     On or about May 3, 2023, without permission or authorization from Plaintiff, Defendants willfully and volitionally reproduced and publicly displayed Photograph 2 on the Website as part of an on-line story at URL: https://www.si.com/nfl/cowboys/onsi/news/inside-info-jerry-jones-grandson-helped-dallas-cowboys-draft-texas-longhorns-demarvion-overshown ("*Infringement 3*"). A copy of a screengrab depicting Infringement #3 including Photograph 2, is attached hereto as a part of Exhibit 2

64.     Infringement 3 is a copy or substantially similar copy of Plaintiff's Photograph, including protectable elements such as composition, subject matter, timing, angle, lighting, perspective, and overall expressive content.

65.     Upon information and belief, each of Plaintiff's Photographs identified herein was copied and displayed by Defendants without license or permission, thereby infringing on Plaintiff's copyrights in and to the Photographs (hereinafter the unauthorized uses set forth above are referred to as the "*Infringements*").

66.     Plaintiff first observed the Infringements on December 17, 2024.

67.     The Infringements each include a URL ("Uniform Resource Locator") that was accessible to the public and remained available for viewing for a non-transitory period of time.

68.     Upon information and belief, Defendants take an active and pervasive role in the creation, selection, acquisition, licensing, editing, publication, posting, promotion, and display of content appearing on the Website, including Plaintiff's Photographs.

69.     Defendants exercised control over the content published on the Website and were responsible for selecting, uploading, and displaying the Photographs. Defendants used the Photographs in furtherance of their commercial interests and derived financial benefit from

8

increased user engagement, brand promotion, and/or sales.

70.    Upon information and belief, Defendants directly contribute to and exercise control over the content published on the Website by, inter alia, utilizing employees, agents, contractors, administrators, editors, moderators, social media managers, and other representatives acting on their behalf, including but not limited to Joey Linn, Timm Hamm and Riley Shepard (collectively, the "*Representatives*").

71.    Upon information and belief, Defendants vested their Representatives with actual and/or apparent authority to create, select, upload, publish, edit, modify, remove, monitor, and otherwise manage content appearing on the Website on Defendants' behalf.

72.    Upon information and belief, the Representatives acted within the course and scope of their agency, employment, contractual relationship, and/or other authorized relationship with Defendants when creating, selecting, uploading, publishing, displaying, promoting, and/or distributing the content containing Plaintiff's Photographs.

73.    Upon information and belief, Defendants authorized, directed, ratified, approved, and/or knowingly permitted the actions of their Representatives with respect to content appearing on the Website, including the content containing Plaintiff's Photographs.

74.    Upon information and belief, the Representatives actively reviewed, monitored, edited, managed, moderated, and otherwise exercised control over content appearing on the Website. As a result, Defendants had actual and/or constructive knowledge of the content published thereon, including the Infringements.

75.    Upon information and belief, Defendants maintained the right and ability to supervise, control, review, approve, modify, remove, and otherwise regulate content appearing on the Website and exercised such control through their Representatives acting within the course and scope of their authority.

76.    Upon information and belief, the Photographs were intentionally and willfully selected, published, displayed, and distributed by Defendants.

77.    Upon information and belief, Defendants are not entitled to the limitations on

9

liability set forth in 17 U.S.C. §512 because the Infringements were selected, uploaded, approved, published, and/or distributed by Defendants and/or their Representatives acting within the scope of their authority.

78.    Upon information and belief, the Infringements were not posted at the direction of a "user" within the meaning of 17 U.S.C. §512(c) but instead were affirmatively selected and published by Defendants and/or its Representatives.

79.    Upon information and belief, Defendants were aware of facts or circumstances from which the determination regarding the Infringements were apparent. Defendants cannot claim that they were not aware of the infringing activities, including the specific Infringements which form the basis of this complaint, since such a claim would amount to only willful blindness on the part of Defendants.

80.    Upon information and belief, Defendants engaged in the Infringements knowingly and in violation of applicable United States copyright laws.

81.    Upon information and belief, Defendants exercised editorial, managerial, and operational control over the content appearing on the Website.

82.    Upon information and belief, Defendants have the legal right and ability to control and limit the infringing activities on the Website and exercised and/or had the right and ability to exercise such right.

83.    Upon information and belief, Defendants monitor the content on the Website.

84.    Upon information and belief, Defendants have received a financial benefit directly attributable to the Infringements.

85.    Upon information and belief, the Infringements increased traffic to the Website and, in turn, caused Defendants to realize an increase in their advertising revenues and/or merchandise sales.

86.    Upon information and belief, Defendants distributed the Infringements to a broad audience through the Website and derived commercial value from the resulting user traffic, engagement, advertising impressions, and/or promotional exposure.

10

87.    Upon information and belief, Defendants at all times had the ability to stop the reproduction and display of Plaintiff's copyrighted material.

88.    Defendants' use of the Photographs harmed the actual market for the Photographs.

89.    Defendants' use of the Photographs, if widespread, would harm Plaintiff's potential market for the Photographs.

90.    Defendants' unauthorized use usurps the market for licensed uses of the Photographs and undermines Plaintiff's ability to license his work to other commercial entities.

91.    On or about December 31, 2024, Plaintiff, through counsel, notified Defendant, the Authentic Brands Group, LLC, via email to DMCA@Authentic.com of the infringing activity described herein and demanded that Defendant cease and desist from its unauthorized use of Plaintiff's copyrighted work and compensate Plaintiff for its unauthorized use thereof.

92.    Thereafter, on or about January 30, 2025, Plaintiff, through counsel, sent a follow-up communication to the Authentic Brands Group seeking to resolve the dispute without litigation and affording Defendant an additional opportunity to address Plaintiff's claims.

93.    On or about September 24, 2025, Plaintiff, through counsel, notified Defendant, the ABG-SI LLC, via their counsel, Matthew G. Halgren of Sheppard Mullin, via email mhalgren@sheppardmullin.com of the infringing activity described herein and demanded that Defendant cease and desist from its unauthorized use of Plaintiff's copyrighted work and compensate Plaintiff for its unauthorized use thereof.

94.    Thereafter, on or about October 24, 2025, Plaintiff, through counsel, sent a follow-up communication to the ABG-SI, LLC, through their counsel above, seeking to resolve the dispute without litigation and affording Defendant an additional opportunity to address Plaintiff's claims.

95.    Despite receiving notice of Plaintiff's claims and being afforded multiple opportunities to resolve the matter amicably, Defendant failed and/or refused to adequately address Plaintiff's claims, thereby necessitating the commencement of this action.

96.    As a result of Defendant's misconduct, Plaintiff has been substantially harmed.

11

*(Direct Copyright Infringements against Arena)*

97.     Plaintiff repeats and incorporates by reference the allegations contained in the preceding paragraphs, as though set forth in full herein.

98.     The Photographs are each original, creative works in which Plaintiff owns a valid copyright.

99.     The Photographs are properly registered with the USCO and Plaintiff has complied with all statutory formalities under the Copyright Act and under regulations published by the USCO.

100.     Plaintiff has not granted Arena a license or the right to use the Photographs in any manner, nor has Plaintiff assigned any of its exclusive rights in the copyright to Arena.

101.     Without permission or authorization from Plaintiff and in willful violation of Plaintiff's rights under 17 U.S.C. §106, Arena improperly and illegally copied, reproduced, distributed, adapted, and/or publicly displayed works copyrighted by Plaintiff thereby violating one of Plaintiff's exclusive rights in its copyrights.

102.     Arena's reproduction of the Photographs and display of the Photographs constitutes willful copyright Infringements.

103.     Upon information and belief, Arena willfully infringed upon Plaintiff's Photographs in violation of Title 17 of the U.S. Code, in that Arena used, published, communicated, posted, publicized, and otherwise held out to the public for commercial benefit, Plaintiff's original and unique Photographs without Plaintiff's consent or authority.

104.     As a result of Arena's violations of Title 17 of the U.S. Code, Plaintiff is entitled to an award of actual damages and disgorgement of all of Arena's profits attributable to the Infringements as provided by 17 U.S.C. § 504 in an amount to be proven or, in the alternative, at Plaintiff's election, an award for statutory damages against Arena for each copyrighted work infringed pursuant to 17 U.S.C. § 504(c).

105.    As a result of the Arena's violations of Title 17 of the U.S. Code, the court in its discretion may allow the recovery of full costs as well as reasonable attorney's fees and costs pursuant to 17 U.S.C. § 505 from Arena.

106.    As a result of Arena's violations of Title 17 of the U.S. Code, Plaintiff is entitled to injunctive relief to prevent or restrain Infringements of his copyright pursuant to 17 U.S.C. § 502.

**FIRST CAUSE OF ACTION**
*(Vicarious Copyright Infringemenst against ABG-SI)*

107.    Plaintiff repeats and incorporates, as though fully set forth herein, each and every allegation contained in the preceding paragraphs, as though set forth in full herein.

108.    Upon information and belief, ABG-SI possessed, retained, and exercised the contractual right and ability to supervise, control, regulate, approve, review, modify, remove, and otherwise oversee the operation of the Sports Illustrated publishing enterprise, including content appearing on the Website, through its ownership, licensing, and contractual rights relating to Sports Illustrated intellectual property and publishing operations.

109.    Upon information and belief, ABG-SI retained ownership interests in Sports Illustrated intellectual property, content assets, digital properties, and publishing operations and maintained the ability to regulate the manner in which such assets were exploited pursuant to its licensing arrangements.

110.    Upon information and belief, ABG-SI retained contractual rights to supervise, regulate, approve, review, modify, remove, and otherwise control the exploitation of Sports Illustrated intellectual property and publishing assets licensed for use in connection with the Website.

111.    ABG-SI enjoyed direct financial benefit from the operation of the Website through royalties, licensing fees, commissions, advertising-related revenues, brand enhancement, audience development, and other commercial benefits derived from Sports Illustrated publishing operations

112.    ABG-SI enjoyed a direct financial benefit from the Infringements from, *inter alia*, advertising revenue from the increased traffic to the Website and from increase in fees paid by

advertisers and sponsors.

113.    Upon information and belief, ABG-SI enjoyed a direct financial benefit from using the appeal or "draw" of Plaintiff's Photographs to increase user traffic to the Website, thereby increasing advertising revenue.

114.    ABG-SI is liable as a vicarious infringer because it possessed the right and ability to supervise, control, and prevent the Infringement, derived a direct financial benefit from the Infringement, and failed to prevent or stop the Infringements.

115.    Upon information and belief, ABG-SI willfully vicariously infringed upon Plaintiff's copyrighted Photographs in violation of Title 17 of the U.S. Code.

116.    As a result of ABG-SI's violations of Title 17 of the U.S. Code, Plaintiff is entitled to an award of actual damages and disgorgement of all of ABG-SI's profits attributable to the Infringements as provided by 17 U.S.C. § 504(b) in an amount to be proven or, in the alternative, at Plaintiff's election, an award for statutory damages against ABG-SI for each copyrighted work infringed pursuant to 17 U.S.C. § 504(c).

117.    As a result of the ABG-SI's violations of Title 17 of the U.S. Code, the court in its discretion may award Plaintiff the recovery of its reasonable attorney's fees and costs pursuant to 17 U.S.C. § 505.

118.    As a result of ABG-SI's violations of Title 17 of the U.S. Code, Plaintiff is entitled to injunctive relief to prevent or restrain infringement of his copyrights pursuant to 17 U.S.C. § 502.

## JURY DEMAND

119.    Plaintiff hereby demands a trial of this action by jury.

## PRAYER FOR RELIEF

**WHEREFORE** Plaintiff respectfully requests that the Court enters a judgment finding that Arena directly infringed Plaintiff's copyrights and that ABG-SI is liable for vicarious copyright infringement of Plaintiff's rights to the Photographs in violation of 17 U.S.C. §501 *et seq.* and therefore award damages and monetary relief as follows:

14

a.     finding that Defendants infringed Plaintiff's copyright interest in and to the Photographs by copying, reproducing, distributing, publishing, and publicly displaying it without a license or consent;

b.     for an award of actual damages and disgorgement of all of Defendants' profits attributable to the Infringements as provided by 17 U.S.C. § 504(b) in an amount to be proven or, in the alternative, at Plaintiff's election, an award for statutory damages against each Defendant for each copyrighted work infringed pursuant to 17 U.S.C. § 504(c), whichever is larger;

c.     for an order pursuant to 17 U.S.C. § 502(a) enjoining Defendant from any infringing use of any of Plaintiff's works;

d.     for costs of litigation and reasonable attorney's fees against Defendant pursuant to 17 U.S.C. § 505;

e.     for pre-judgment interest as permitted by law; and

f.     for any other relief the Court deems just and proper.

DATED: July 14, 2026

**SANDERS LAW GROUP**

By: _/s/ Craig Sanders_
Craig Sanders, Esq.
333 Earle Ovington Blvd, Suite 402
Uniondale, NY 11553
Tel: (516) 203-7600
Email: csanders@sanderslaw.group
File No.: 131194

*Attorneys for Plaintiff*

15